United States District Court
Southern District of Texas
**ENTERED**
May 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE REYNOLDS AND REYNOLDS COMPANY, | § § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-01260 |
| I3 BRANDS, INC., ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiff The Reynolds and Reynolds Company's Motion To Compel Arbitration of Counterclaims, Or, In The Alternative, To Dismiss Counterclaims Under Rule 12(b)(6) ("Motion to Compel Arbitration"). *See* Dkt. 39.[1] After reviewing the Motion to Compel Arbitration, response, reply, and applicable law, I recommend that the Motion to Compel Arbitration be **GRANTED** and the counterclaims asserted in this case be sent to arbitration.

### BACKGROUND

The Reynolds and Reynolds Company ("Reynolds") develops and licenses enterprise software platforms for automobile dealerships. Reynolds filed this lawsuit against i3 Brands, Inc. ("i3 Brands") and Michael Lucas ("Lucas") for breach of contract

---

[1] A sealed copy of the Motion to Compel Arbitration has been filed at Dkt. 39. The sealed version contains several documents containing confidential information, such as an Asset Purchase Agreement and a Modification to the Asset Purchase Agreement. A redacted copy of the Motion to Compel Arbitration, which does not include the confidential information, is available for public viewing at Dkt. 38.

and declaratory judgment. Reynolds alleges that i3 Brands has breached, and is in default under, an October 2017 Loan Agreement by which Reynolds loaned i3 Brands $2 million. More specifically, Reynolds alleges that i3 Brands failed to make required interest payments, failed to provide required financial statements, and engaged in certain change-of-control transactions—all in violation of the terms of the Loan Agreement. Reynolds also claims that Lucas breached a written Personal Guaranty by which he agreed to guarantee i3 Brands's obligations under the Loan Agreement. Reynolds further alleges that i3 Brands has breached, and is in default under, a written Pledge Agreement whereby i3 Brands pledged 100 percent of the stock of its wholly-owned subsidiary, PartProtection, LLC, as security for the $2 million loan.

i3 Brands and Lucas strongly deny Reynolds's claims. i3 Brands and Lucas have also brought counterclaims against Reynolds arising out of a business relationship gone bad. According to the Original Counterclaim and Third-Party Petition,[2] PartProtection, LLC developed and maintains an automotive parts software commonly known as "PartProtection." For years, "Reynolds was interested in integrating the PartProtection software into its own [Dealer Management System], and ultimately purchasing the PartProtection software from i3 [Brands]." Dkt. 37 at 3. Reynolds and i3 Brands entered into an Asset Purchase Agreement in April 2017 by which Reynolds agreed to purchase certain of i3 Brands's assets. As part of the Asset Purchase Agreement, i3 Brands also

---

[2] In addition to the counterclaims asserted by i3 Brands and Lucas, PartProtection, LLC has filed third-party claims against Reynolds. For the purposes of this Memorandum and Recommendation, the term "counterclaims" will include the claims for affirmative relief brought by i3 Brands, Lucas, and PartProtection, LLC.

agreed to license the PartProtection software to Reynolds on commercially reasonable terms to be negotiated later.

On October 6, 2017, the same day the Loan Agreement was signed, i3 Brands contends that it entered into an Agreement of Basic Terms with Reynolds, establishing the commercially reasonable terms for the PartProtection license in the form of a royalty fee payable by Reynolds to i3 Brands.  As a result of these agreements, i3 Brands claims that it permitted its employees to divulge certain trade secrets, proprietary pricing, strategic relationships, and intellectual property to Reynolds.  After divulging this sensitive information, i3 Brands says it learned that Reynolds apparently refused to sign the Agreement of Basic Terms.  i3 Brands and Lucas claim that Reynolds fraudulently induced their participation and they would not have entered into the Loan Agreement and related documents, nor permitted their employees to share any sensitive information, if they had known Reynolds would not countersign the Agreement of Basic Terms.

The specific causes of action asserted by i3 Brands, Lucas, and PartProtection, LLC (collectively, "Defendants") include fraudulent inducement, fraudulent concealment, breach of good faith and fair dealing, breach of fiduciary duty, breach of contract (of both the Asset Purchase Agreement and the Agreement of Basic Terms), promissory estoppel, and misappropriation of trade secrets.  After Defendants filed their claims for affirmative relief, Reynolds filed this Motion to Compel Arbitration.  Reynolds makes two main arguments.  First, Reynolds contends that the counterclaims are subject to arbitration pursuant to a broad arbitration clause contained in the Asset Purchase Agreement.  Second, in the event I determine that the counterclaims are not subject to arbitration, Reynolds

3

maintains that the counterclaims should be dismissed in accordance with Rule 12(b)(6) because i3 Brands and Lucas have failed to state a claim upon which relief can be granted.

## ANALYSIS

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements that evidence a transaction in interstate commerce, like the Asset Purchase Agreement at issue here. *See* 9 U.S.C. § 1, *et seq*. For many years, courts and commentators alike have recognized that the FAA expresses a strong national policy in favor of arbitration, and that they should resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *See Southland v. Keating*, 465 U.S. 1, 10 (1983); *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998). Under the FAA, a district court conducts a two-prong inquiry in analyzing a motion to compel arbitration. First, the court must determine whether the parties agreed to arbitrate. *See Dealer Comput. Servs. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). To do that, the court asks whether a valid agreement to arbitrate exists and, if so, whether the claims at issue are within the scope of that agreement. *See id*. If this first prong is met, the court then jumps to the second prong and considers whether a federal statute or policy renders the claims nonarbitrable. *See id*.

Reynolds contends that all the counterclaims advanced in this litigation are subject to arbitration pursuant to an arbitration provision contained in the Asset Purchase Agreement between Reynolds and i3 Brands. That arbitration clause provides, in relevant part, as follows:

> **Binding Arbitration.** In the event of any dispute, claim, or disagreement arising out of, connected with, or relating in any way to this Agreement (including its negotiation, performance, non-performance, interpretation, termination or breach, or the relationship between the Parties established by this Agreement) (a "*Dispute*"), then either Party may submit the Dispute to binding arbitration administered by the American Arbitration Association ("*AAA*") in accordance with the provisions of its Commercial Arbitration Rules then currently in effect (the "*AAA Rules*"). . . . The award shall be final, binding, and conclusive on the Parties.

Dkt. 39-5 at 41–42. This is an extremely broad arbitration provision because it is "not limited to claims that literally 'arise under the contract,' but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

A.     WHO DETERMINES ARBITRABILITY?

As an initial matter, I must determine who should decide whether the counterclaims at issue are arbitrable—the district court or an arbitrator. "Ordinarily, whether a claim is subject to arbitration is a question for a court. However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions—such as whether a particular claim is subject to arbitration—are for the arbitrator, and not a court, to decide." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (citation omitted). *See also Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (recognizing that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). A contractual provision that "transfer[s] the court's power to decide arbitrability questions to the arbitrator" is known as a "delegation

5

clause." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). "Delegation clauses are enforceable" and require the district "court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* Where a party asserts that an arbitration agreement contains a delegation clause, the district court's analysis is limited to two inquiries: "(1) whether the parties entered into a valid arbitration agreement, and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016).

Applying this two-prong test here, there is no question that the parties entered into a binding and enforceable arbitration agreement as part of the Asset Purchase Agreement. As far as a delegation clause is concerned, the arbitration provision dictates that the AAA Rules will govern the arbitration proceeding. Because the AAA Rules specifically provide that the arbitrator has the authority to determine whether claims are arbitrable, the Fifth Circuit has held that "[t]he express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). The question of whether the instant claims are arbitrable thus appears to be "plainly the right and responsibility only of the arbitrator." *Kubala*, 830 F.3d at 204.

My analysis, however, does not stop there. This case presents a relatively unique situation in that there are multiple agreements at issue, not all which include arbitration provisions. While the Asset Purchase Agreement clearly contains an arbitration provision, the Loan Agreement, Pledge Agreement, and Personal Guaranty do not. Added to the mix is the fact that, as Defendants' counsel readily admitted at oral argument, the negotiations

underlying the various transactions at issue in the counterclaims were all intertwined and interrelated.

Defendants point me to several cases in which district courts denied motions to compel arbitration and, in the process, held that it was for the court, not an arbitrator, to decide issues of arbitrability notwithstanding the existence of an agreement to arbitrate that incorporated the AAA Rules. *See Scott Envtl. Servs., Inc. v. Newfield Expl. Co.*, No. 2:19-cv-00026-JRG-RSP, 2019 WL 5393989, at *4 (E.D. Tex. Oct. 22, 2019); *PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, No. CIV.A. H-13-1857, 2013 WL 3929077, at *8 (S.D. Tex. July 29, 2013), *aff'd*, 783 F.3d 256 (5th Cir. 2015). I find these cases readily distinguishable from the present situation. In those cases, there were multiple differing contracts or provisions, some expressly demonstrating a pre-existing intent to judicially resolve certain disputes and others calling for arbitration of specified disputes. *See Scott Envtl. Servs.*, 2019 WL 5393989, at *4 (the parties entered into one agreement requiring disputes to be determined by AAA arbitration and another agreement establishing that exclusive jurisdiction for all disputes shall lie in the United States District Court for the Eastern District of Texas, Marshall Division or Texas state court in Gregg County, Texas); *PoolRe Ins. Corp.*, 2013 WL 3929077, at *7 (The contract at issue provided that certain claims were subject to arbitration before the AAA while "the sole venue and jurisdiction for resolution of [other claims] shall be courts located in Harris County, Texas."). By contrast, there are no contracts at issue here which require—or even suggest—that particular claims must be decided in a judicial forum. The Loan Agreement, its various amendments, the Pledge Agreement, and the Personal Guaranty are silent as to whether

7

disputes must be litigated or arbitrated. The Loan Agreement and Pledge Agreement simply state that "Texas law and venue shall apply to any dispute related to this Agreement or any related document." Dkts. 1-1 at 7; 1-3 at 6; 1-5 at 1; 1-6 at 2. Upon close examination, the contractual language in the Loan Agreement and the Pledge Agreement is fully consistent with the Asset Purchase Agreement, which provides that Texas law governs and sets arbitration as the selected venue for all disputes relating to the Asset Purchase Agreement or the relationship between the parties.

In determining the threshold issue of whether the arbitrator or the district court has the ultimate authority to decide if the counterclaims are subject to arbitration, I am reminded that the Fifth Circuit has held that "[i]f there is a delegation clause, [a] motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202. *See also Reyna*, 839 F.3d at 378 (holding that "[b]ecause the arbitration agreement contains a delegation clause, any disputes about the arbitrability of [plaintiff's] claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts"). "So long as there is a plausible argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." *Kubala*, 830 F.3d at 202 n.1 (internal quotation marks and citation omitted). That is exactly what we have here. Given the clear mandate by the Fifth Circuit, I feel as if my hands are tied. Because there is a valid delegation clause, I must defer to the arbitrator to decide the gateway issue of arbitrability.

8

**B.     WAIVER**

To the extent the arbitration clause is binding, enforceable, and encompasses the counterclaims asserted in this case, Defendants take the position that Reynolds has waived its arbitration rights by invoking the judicial process and asserting claims for affirmative relief.[3]  It is unfair, Defendants argue, for "the Court to close one eye and ignore the fact that [Reynolds] seeks to arbitrate [Defendants'] counterclaims, while allowing its related loan claims to remain before the Court." Dkt. 42 at 6.[4]

Even where an arbitration agreement delegates the arbitrability decision to an arbitrator, the district court retains the right to determine whether the right to arbitrate has been waived. *See Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 803–04 (5th Cir. 2017). Fortunately, over the years a substantial body of law concerning the waiver of a right to compel arbitration has been developed. Among the fundamental principles is that "[t]here is a strong presumption against waiver of arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). As such, "[t]he burden on one seeking to prove a waiver of arbitration is a heavy one." *Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir. 1976). A party waives its right to arbitrate through a litigation-conduct waiver if it "(1)

---

[3] Although Lucas and PartProtection, LLC are not signatories to the Asset Purchase Agreement containing the arbitration clause, Reynolds argues that they are nonetheless required to submit to arbitration as a result of the Fifth Circuit's direct estoppel doctrine. The direct estoppel doctrine provides that a party is not permitted to knowingly receive the benefits of an agreement that contains an arbitration provision and then use its status as a non-signatory to avoid the arbitration provision. *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). Lucas and PartProtection, LLC do not contest that the direct estoppel doctrine applies here.

[4] To be clear, I take no position on whether Reynolds's claims for affirmative relief should have been brought in arbitration. There is no reason for me to delve into that quagmire since the issue has not been raised by i3 Brands and Lucas.

9

substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018) (internal quotation marks and citation omitted).

In order to substantially invoke the judicial process, a party must "engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 784 (quoting *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010)). Importantly, the Fifth Circuit has expressly held that waiver should be analyzed on a claim-by-claim basis, meaning "that a party only invokes the judicial process to the extent it litigates a *specific claim* it subsequently seeks to arbitrate." *Subway Equip. Leasing Corp.*, 169 F.3d at 328 (emphasis added). There is no ambiguity in the Fifth Circuit's position: "As we make clear today, in order to invoke the judicial process [and, therefore, waive a right to arbitrate], a party must have litigated *the claim* that the party now proposes to arbitrate." *Id.* at 328–29 (emphasis added).

Reynolds's affirmative claims for relief in this lawsuit arise from alleged breaches of a Loan Agreement and a Pledge Agreement. Meanwhile, there is no counterclaim for a breach of the Loan Agreement or Pledge Agreement. The counterclaims are nine separate and independent claims for relief based on tort law, statutory violations, and breaches of contracts other than the Loan Agreement and Pledge Agreement. As soon as the counterclaims were asserted in this litigation, Reynolds filed this Motion to Compel Arbitration, seeking to force Defendants to resolve those claims in arbitration. Not once did Reynolds even hint that it wanted to litigate the counterclaims in this forum. Because Reynolds has not sought to invoke the judicial process with respect to the arbitrable claims

10

put at issue by Defendants, Reynolds has not waived its right to compel arbitration of those claims. *See id.* at 329 (holding that there is "no basis for concluding that [the plaintiff] should be denied an opportunity to arbitrate this claim" when the plaintiff "did not invoke the judicial process with respect to the arbitrable claim here").

As a legal matter, it is completely irrelevant that Reynolds brings collection claims in federal court and, at the same time, seeks to force Defendants to seek redress for their distinct counterclaims before an arbitration panel. The district court's holding in *Fidelity National Corporation v. Blakely*, 305 F. Supp. 2d 639 (S.D. Miss. 2003) illustrates this point. In that case, Republic Finance, Inc. ("Republic") filed a lawsuit against Naomi Arthea Blakely ("Blakely") to recover the outstanding balance on a note. In response, Blakely brought counterclaims "against Republic for alleged breach of fiduciary duty, fraudulent and negligent misrepresentation, negligence, unconscionability and unjust enrichment in connection with the loan transaction, based on allegations that Republic improperly included credit insurance on her loan." *Id.* at 640. Republic then moved to compel arbitration of the counterclaims while seeking to pursue its collection action in court. Blakely argued, much like Defendants do here, that Republic waived any right it had to compel arbitration by invoking the judicial process in court. Relying on *Subway Equipment Leasing Corporation*, which held that waiver should be analyzed on a claim-by-claim basis, the district court acknowledged the general rule that "a party only invokes the judicial process where it litigates a specific *claim* it subsequently seeks to arbitrate." *Id.* at 642 (emphasis added). Because Republic never attempted to litigate the subject of Blakely's counterclaims, but instead promptly moved to compel arbitration, the district

11

court held that there was no waiver—even though the counterclaims asserted tort claims associated with the underlying transaction. *See id*. The same analysis applies here.

A number of other courts in the Fifth Circuit have routinely compelled arbitration of counterclaims while permitting a plaintiff to pursue related, but separate, claims in court. *See Credit Acceptance Corp. v. White*, No. 2:12CV39KS-MTP, 2012 WL 12884581, at *3–4 (S.D. Miss. June 14, 2012) (holding lender's state-court collection action did not waive its right to seek arbitration of counterclaims asserting tort claims, statutory violations, and breach of a related, but separate, contract); *CitiFinancial, Inc. v. Farmer*, No. 4:06CV4LR, 2006 WL 1273712, at *2 (S.D. Miss. May 9, 2006) (refusing to find waiver of right to compel arbitration of counterclaims for misrepresentation, fraud, and intentional infliction of emotional distress arising out of a loan transaction after the plaintiff brought an action in Delaware Chancery Court seeking to reform a deed of trust). This authority is persuasive, especially given the Fifth Circuit's clear instructions to lower courts to assess waiver on a claim-by-claim basis. In addition, in light of the strong federal policy favoring arbitration, any doubts I have concerning waiver of arbitrability must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). All in all, I find that Reynolds's filing of a debt-collection lawsuit in federal court is not inconsistent with its desire to have the counterclaims resolved in an arbitration proceeding. The waiver doctrine is, therefore, inapplicable in this case.

Even if I concluded that Reynolds invoked the judicial process, the arbitration waiver argument would still fail because Defendants cannot show that they have been prejudiced. To show prejudice, a party must demonstrate "delay, expense, or damage to a

party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Forby*, 909 F.3d at 784 (quoting *Republic Ins. Co. v. PAICO Receivables, L.L.C.*, 383 F.3d 341, 346 (5th Cir. 2004)). There has been no delay, expense, or damage here. From day one, Reynolds made it perfectly clear that it firmly believed the counterclaims needed to be arbitrated. Indeed, Reynolds moved to compel arbitration immediately after the counterclaims were asserted, and has carefully avoided pursuing any efforts to initiate discovery and increase litigation costs. Simply put, there is no prejudice.

Because I am persuaded by Reynolds's arguments that (i) an arbitrator should decide whether the counterclaims are subject to arbitration, and (ii) there is no waiver of arbitration in this case, I need not address whether Defendants have stated cognizable claims. That will be for an arbitrator to determine at a later date in the event the arbitrator determines the counterclaims are properly in arbitration.

## CONCLUSION

For the reasons detailed above, I **RECOMMEND** that the Motion to Compel Arbitration be **GRANTED** and the counterclaims asserted in this case be sent to arbitration for further proceedings.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 27th day of May, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE